UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSEPH A. ANDERER,
MILWAUKEE POLICE ASSOCIATION,
and MICHAEL V. CRIVELLO,

           Plaintiffs,

v.

CITY OF MILWAUKEE,

           Defendant.

Case No. 16-CV-1118-JPS

ORDER

---

1.     INTRODUCTION

On September 30, 2016, defendant City of Milwaukee (the "defendant" or "City") filed a motion for judgment on the pleadings, seeking dismissal of the entirety of the Complaint. (Docket #11). On October 20, 2016, plaintiffs Joseph A. Anderer, Milwaukee Police Association, and Michael V. Crivello (collectively the "plaintiffs" or "Officers") responded to the motion. (Docket #16). On November 2, 2016, the City submitted a reply in support of its motion. (Docket #17). The motion is now fully briefed and, for the reasons explained below, it will be granted.

2.     STANDARD OF REVIEW

Federal Rule of Civil Procedure ("FRCP") 12(c) permits a party to seek judgment once each side has filed its pleadings. Fed. R. Civ. P. 12(c). The Court reviews such motions

> by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under [FRCP] 12(b)(6).... Thus, we view the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.

*Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citations and quotations omitted). The Court must "draw all reasonable inferences and facts in favor of the nonmovant, but need not accept as true any legal assertions." *Wagner v. Teva Pharmaceuticals USA, Inc.*, No. 15-2294, 2016 WL 6081381 *1 (7th Cir. Oct. 18, 2016). The City concedes as much; it admits all of the material factual allegations stated in the complaint, disputing only the legal conclusions drawn therefrom. *See* (Docket #1-1 at 4-11; Docket #2; Docket #12 at 2).

The Court may take judicial notice of documents in the public record without converting a FRCP 12(c) motion to one for summary judgment under FRCP 56 (which would necessitate discovery). *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013). The City requests that the Court take judicial notice of the documents appended to its motion, which include a Wisconsin state statute and various official documents of the City of Milwaukee and its subdivisions. *See* (Docket #12-1). The Officers do not oppose this request. The documents the City presents are the proper subjects of judicial notice and the Court will, therefore, take notice of them. *See* Fed. R. Evid. 201(b) and (c)(2); *U.S. v. Hemphill*, 447 F. App'x 733, 736 (7th Cir. 2011).

3.  RELEVANT FACTS

The following facts are gleaned from viewing the factual allegations of the complaint in a light most favorable to the plaintiffs. The plaintiffs are two individual police officers and the union that represents Milwaukee Police Department ("MPD") officers, the Milwaukee Police Association ("MPA"). (Docket #1-1 at ¶¶ 3-5). Prior to 2013, a City charter ordinance

required all City employees to reside within the municipality.[1] *Id.* at ¶ 8. In 2013, Wisconsin statute Section 66.0502 was enacted, eliminating all such "residency" requirements in cities throughout the state.[2] *Id.* at ¶ 9. The statute permitted an exception for law enforcement personnel such that a municipality could require those employees to reside within fifteen miles of the city limits (the "Zone"). *Id.* at ¶ 10. The statute became effective on July 2, 2013. *Id.* at ¶ 11.

That same day, instead of explicitly adopting a Zone requirement for its law enforcement employees[3], the City promulgated a resolution "directing all City officials to continue enforcement of [the residency ordinance]," and this resolution was signed into law by the mayor.[4] *Id.* at ¶¶ 12-14. The MPA sued the City to challenge continued enforcement of the residency requirement. *Id.* at ¶ 15. On June 23, 2016, the Wisconsin Supreme Court ruled in the MPA's favor. *Id.* at ¶ 16; *see Black v. City of Milwaukee*, 882 N.W.2d 333 (Wis. 2016). The City made no attempt to impose a Zone requirement throughout the pendency of that case. *Id.* at ¶ 17.

During the time between the passage of Section 66.0502 and the *Black* ruling, some law enforcement officers moved outside the City and the area which would be included in the City's Zone. *Id.* at ¶¶ 18, 21. Further, the City

---

[1]Section 5-02 of the Milwaukee City Charter. *See* (Docket #12-1 at 1-3).

[2](Docket #12-1 at 4).

[3]The relevant ordinance applies to all "law enforcement, fire and emergency employees[.]" (Docket #12-1 at 8-10). Because this action was brought solely by law enforcement officers and their union, the Court will refer to them alone for brevity's sake.

[4](Docket #12-1 at 5-7).

hired a number of new officers who lived outside the Zone. *Id.* at ¶¶ 19-20. On July 26, 2016, the City finally imposed a Zone requirement on all law enforcement personnel, including those who had moved out of the Zone in the interim.⁵ *Id.* at ¶¶ 22-23. As with the previous residency ordinance, living outside the Zone meant the employee would be terminated. *Id.* at ¶ 24. The new ordinance softened the rule in three ways: 1) an employee could ask for up to six months' time to move into the Zone, 2) an employee could be granted a "temporary exception" by the relevant City authorities based on financial hardship, and 3) an employee could be granted a complete exception if they were married to a person who was also subject to a residency requirement for a different municipality.⁶ *See* (Docket #12-1 at 9-10). The City's Zone requirement took effect on October 11, 2016. *Id.* at 10.

4. ANALYSIS

The Officers allege two causes of action. First, they assert a "Violation of Substantive Due Process (Property Right)[.]" (Docket #1-1 at 9). The Officers claim that Section 66.0502 and *Black* granted them a right to be free of the City's residency requirement. *Id.* at ¶¶ 26-27. They do not contest the City's authority to impose a Zone requirement, but allege that it cannot do so retroactively. *Id.* at ¶¶ 28-29. The Officers argue that this would interfere with rights of those law enforcement employees who left the Zone before the Zone requirement was created. *Id.* at ¶ 30. They claim that this denies those

---

⁵(Docket #12-1 at 8-10).

⁶These exceptions are embodied in the Rules of the Board of Fire and Police Commissioners for the City. Those rules automatically grant the six-month extension to any newly hired employees and set a procedure for hardship applications. *See* (Docket #12-1 at 11-13).

employees substantive due process in violation of the Fifth and Fourteenth Amendments. *Id.* The second cause of action is also for substantive due process, but brought pursuant to the Wisconsin Constitution. *Id.* at 10. The Officers assert the same violation as detailed in the first cause of action. *Id.* at ¶¶ 31-32.

The City presents two arguments in favor of dismissal. First, it asserts that the Zone requirement does not apply retroactively, and thus does not affect the Officers' claimed substantive rights.[7] Second, the City argues that even if the Zone requirement is viewed as having retroactive effect, it does not violate a recognizable substantive due process right. While these two considerations are closely linked, as discussed below, the first is dispositive. The Court addresses each cause of action separately.

### 4.1 Federal Constitutional Claim

The City contends that the Zone requirement does not operate *retroactively*, but instead only *prospectively*. (Docket #12 at 7-10). It relies almost entirely on the Seventh Circuit's decision in *Andre v. Board of Trustees of the Village of Maywood*, 561 F.2d 48 (7th Cir. 1977). In *Andre*, the court upheld an ordinance similar to the one at issue in the instant case. *Id.* at 51. There, the Village of Maywood ("Maywood") enacted an ordinance requiring municipal employees to establish residence within the municipality within a few years. *Id.* at 49. The plaintiffs, law enforcement and emergency services personnel, challenged the ordinance on the grounds that, *inter alia*, it operated retroactively to impair their pre-existing, vested right to live outside

---

[7]The Officers have made plain that they do not contest the Zone requirement as a prospective rule for all law enforcement and emergency personnel, but only its application to those employees who moved outside the Zone in the three-year "dead" period for City residency requirements. (Docket #16 at 18).

Maywood. *Id.* The plaintiffs found support for this alleged right in a previously enacted hiring preference ordinance, which permitted Maywood employees to live outside the city boundaries but gave preference in hiring to those within them. *Id.* at 50. The court explained that

> [i]t is plaintiffs' principal argument that the 1971 adoption of [the hiring preference ordinance], together with the past actions of Maywood in allowing its employees to reside elsewhere, created in plaintiffs a vested contractual right to live outside Maywood. The adoption of the 1975 residency requirement ordinance acted to repeal [the hiring preference ordinance's] "express approval and authorization" to reside outside Maywood and, their argument concludes, resulted in an unconstitutional exercise of the municipality's police power.

*Id.*

The court disagreed, finding that the hiring preference ordinance gave no indication of "the creation of an absolute unconditional right in plaintiffs to live outside Maywood." *Id.* at 51. Further, "[e]ven if [it] did create some interest in the plaintiffs, that interest would have been contingent upon the anticipated continuance of the ordinance. Such an interest does not amount to a vested right." *Id.* The court also determined that the residency ordinance was not retroactive. *Id.* It simply required current Maywood employees to change their residence by a certain deadline. *Id.* No employee could be charged with violating the ordinance because they lived outside Maywood in the past. *Id.* "As such," the court concluded, "the challenged ordinance can not be said to penalize activity which was otherwise lawful in the past, and, hence, cannot be considered retrospective in application." *Id.*

The City argues that *Andre*'s holding is applicable here. Neither the City's old residency ordinance, nor the new Zone requirement, punished employees for non-residency prior to gaining City employment. (Docket #12

at 8). Instead, the Zone requirement seeks only future compliance. *Id.* Further, unlike the *Andre* plaintiffs, who relied on Maywood's hiring preference ordinance, the Officers should never have expected that they would be permitted to live outside the Zone. *Id.* at 8-9. The City had vigorously litigated the validity of the residency ordinance and, a month after losing its challenge to Section 66.0502, enacted the Zone requirement. *Id.* at 9.

The Officers attempt to distinguish *Andre*. (Docket #16 at 5-7). They assert that Section 66.0502 granted them "a substantive right to be free from 'residency' being used as a condition of municipal employment," unless and until the City imposed a Zone requirement as authorized by the statute. *Id.* at 5. In their view, this is unlike *Andre*, where the Illinois legislature had enacted a statewide residency requirement for municipalities (subject to exception), rather than repealing all such requirements. *Id.* at 6; *Andre*, 561 F.2d at 50. The Officers further argue that Section 66.0502 "necessarily…authorized City employees to reside outside the City's limits," while the *Andre* court found that the hiring preference ordinance did not "grant express approval or authorization to Maywood employees to live outside Maywood." (Docket #16 at 6-7); *Andre*, 561 F.2d at 50. Finally, *Andre*'s analysis of whether the Maywood plaintiffs had a "vested" right, and whether the residency ordinance penalized past action, is inapposite under Wisconsin case law, which "requires a more nuanced approach." (Docket #16 at 7); *see infra* Part 4.2.

Page 7 of 17

Case 2:16-cv-01118-JPS    Filed 11/23/16    Page 7 of 17    Document 21

As to the Officers' federal claim, the Court finds that *Andre* controls and its logic is extremely persuasive. The Zone requirement mandates residency in the Zone in the future. (Docket #12-1 at 8). It does not "penalize those employees living outside [the City] for having so resided in the past. Under the terms of the ordinance, an employee will be charged with a violation of the residency ordinance not because the employee resided outside [the City] in the past, but rather, an employee will be charged with a violation for failure to establish a [City] residency [in the future]." *Andre*, 561 F.2d at 51 (emphasis added). These holdings demonstrate that causation is the key to retroactivity in analyzing residency requirements. The Officers will not be punished, *i.e.* required to move into the Zone or face termination, *because* they lived outside the Zone from 2013 to 2016. They will only be punished if they failed to have City residency *after* October 11, 2016.[8] Thus, "the [Zone requirement] can not be said to penalize activity which was

---

[8] The tense change is odd in this sentence, as at the time this lawsuit was filed, and at the time the motion for judgment on the pleadings was submitted, October 11, 2016 was a future date.

otherwise lawful in the past, and, hence, cannot be considered retrospective in application." *Id.*[9]

### 4.2 Wisconsin Constitutional Claim

The Officers argue that Wisconsin Supreme Court precedent would find the Zone requirement an invalid retroactive impairment on their substantive rights. *Id.* at 8. Their primary support is found in *Martin* and *Neiman*. *Martin by Scoptur v. Richards*, 531 N.W.2d 70 (Wis. 1995); *Neiman v. American Nat. Property and Cas. Co.*, 613 N.W.2d 160 (Wis. 2000). *Martin*, in pertinent part, discussed the retroactive application of a damages cap. *Martin*, 531 N.W.2d at 86-93. The court explained that "we must first address [the defendants'] claim that [the cap] is a prospective statute, i.e., that it applies prospectively to those who file claims on or after [its effective date]. If the statute is prospective it need not overcome the unique burdens placed upon retroactive laws." *Id.* at 87-88. The court found that the cap was

---

[9]The Officers do not succeed in distinguishing *Andre*. Each of their arguments noted are defeated by the Court's subsequent analysis. *See infra* Part 4.2, pg. 11-16. Further, the *Andre* court made its "retroactivity" holding separate from its "substantive right" holding:

> Further, we do not agree with plaintiffs' contention that the challenged residency ordinance is retrospective in nature. We have already concluded that s I(B)(2) and Maywood's past actions with respect to employee residency did not create in plaintiffs an antecedent vested right[.]…We note in addition that the residency ordinance requires present Maywood employees to establish residency within the Village by specified future dates. The ordinance does not penalize those employees living outside Maywood for having so resided in the past.…As such, the challenged ordinance can not be said to penalize activity which was otherwise lawful in the past, and, hence, cannot be considered retrospective in application.

*Andre*, 561 F.2d at 51 (emphasis added).

retroactive for two reasons: 1) it applied to causes of action which accrued before its effective date[10]; and 2) the legislative history clearly showed an intent to make it retroactive. *Id.* at 88. The court then analyzed the cap using a balancing test, weighing "the public interest served by the retroactive statute against the private interests that are overturned by it." *Id.* at 88. After carefully reviewing these considerations, the court determined that the cap was unconstitutional as applied retroactively. *Id.* at 88-93. In *Neiman*, the court again overturned the retroactive application of a damages cap. *Neiman*, 613 N.W.2d at 167. It found that the cap indisputably applied retroactively, under the same considerations addressed in *Martin. Id.* at 163-64. Also like

---

[10]The court viewed this as a matter of logical deduction:

> The cap applies to actions "filed on or after June 14, 1986." This language must encompass actions which accrued at an earlier date: in order for an action to be "filed" on June 14, 1986, it must have accrued prior to that date.

*Martin*, 531 N.W.2d at 88. It further explained the cap's application to the *Martin* plaintiffs:

> The cap became effective on June 14, 1986, and affects claims filed after that date and before January 1, 1991. The Martins' cause of action accrued prior to the cap's enactment, on July 10, 1985, when Ms. Martin's injuries from the initial accident were aggravated by Dr. Richards' negligence. "[A] cause of action for negligence is said to accrue ... on the date of the plaintiff's injury: 'It is the fact and date of injury that sets in force and operation the factors that create and establish the basis for a claim of damages.'" *Hunter v. Sch. Dist. Gale–Ettrick–Trempealeau*, 97 Wis.2d 435, 442, 293 N.W.2d 515 (1980). Since the cause of action accrued at a time when no cap existed on the amount of noneconomic damages recoverable, application of the cap to the Martins' cause of action constitutes a retroactive application. If we allowed the cap, it would act here to limit the recovery of a cause of action which, when it accrued, was unlimited.

*Id.*

*Martin,* the *Neiman* cap failed the retroactive legislation balancing test. *Id.* at 163-67.

The Officers argue that Section 66.0502 "plainly created a substantive right for all Wisconsin municipal employees to be free from residency [requirements]," and that the Zone requirement "applies 'retroactively' to plaintiffs . . . precisely because it upsets their right to reside where they desire without regard to residency." (Docket #16 at 9). In applying the *Martin* balancing test, the Officers conclude that the Zone requirement must be unconstitutional. *Id.* at 9-11.

The City prevails on this claim for reasons found within the Officers' briefing, not its own. The Officers appear to believe that *Martin* and *Neiman* circumvent the otherwise unavoidable command of *Andre*. However, a close review of those cases demonstrates that they fail to actually support the Officers' key contentions.

In *Martin* and *Neiman*, the court found that a statute's retroactivity was an essential condition precedent to a constitutional challenge to its retroactive application, because "[i]f the statute is prospective it need not overcome the unique burdens placed upon retroactive laws." *Martin*, 531 N.W.2d at 88; *Neiman*, 631 N.W.2d at 163-64. *Martin* further noted that "the general rule in Wisconsin is that legislation is presumed to be prospective unless the statutory language clearly reveals by express language or necessary implication an intent that it apply retroactively." *Martin*, 531 N.W.2d at 88 (quotation omitted). In assessing retroactivity, the Wisconsin Supreme Court looked to the language of the statute and the legislature's intent. *Id.* at 88; *Neiman*, 613 N.W.2d at 163-64. As explained above, in each

case, the Court found that the statutes at issue operated retroactively by force of logic, and that the legislature intended as much. *Id.*

The Officers fail to overcome the presumption that the Zone requirement is prospective, as it does not bear the hallmarks of retroactivity. First, its language does not, by logical deduction, lead inescapably to retroactive application. Rather, it states that "[e]very law enforcement… employe [sic] shall establish…[their] actual residence within 15 miles of the jurisdictional boundaries of the [City]." (Docket #12-1 at 8). This language says nothing about the date of its application as was the case in *Martin* and *Neiman.* Thus, the Zone requirement's text shows that it was intended only as a prospective measure. Second, assuming the recent history of the City residency requirements can be utilized as a "legislative history," there is nothing within that history to suggest that the City intended the Zone requirement to apply retroactively. Instead, they attempted, and failed, to defend their existing residency requirement, and once it was finally put to rest, they created a Zone new requirement consistent with Wisconsin law.[11]

Though the Officers do not directly address these holdings, it appears that they would analogize their right to be free from residency requirements to the accrual of a cause of action. They assert that this right "was fixed as [of] the date of [Section 66.0502's] enactment (July 2, 2013)." (Docket #16 at 9). The Zone requirement, imposed on October 11, 2016, affects that right by

---

[11]It is not clear that the Court need even reach the "legislative history" of the Zone requirement if its language does not indicate retroactivity. *Neiman* stated that the plain language of the cap at issue showed the legislature's intent. *Neiman*, 613 N.W.2d at 164. Namely, the cap used the same "filed on or after" language which *Martin* found to require retroactive application. *Id.* It then stated, "[t]hus, in this case we need not look further to conclude that the legislature intended § 895.04(4) to apply retroactively[,]" and included no discussion of the legislative history. *Id.*

destroying it entirely. This is akin to the damages caps at issue in *Martin* and *Neiman*, which would have limited or expanded[12] the amount recoverable for causes of action which accrued before the caps' inception.

The Court rejects this analogy based on the rule announced in *Black*.[13] This is where the analyses of retroactivity and substantive rights, which *Martin* and *Neiman* suggest should be separate, become somewhat muddled; the parties discussed *Black* solely as part of their substantive rights discussions. In *Black*, the court addressed whether the City's actions in defying Section 66.0502 deprived the plaintiffs (referenced therein as the "Police Association") of substantive due process rights. *Black*, 882 N.W.2d at 351-54. For plaintiffs advancing a constitutional claim under Section 1983, like the Police Association in *Black* and the Officers here, they may show a violation of substantive due process when the "state conduct complained of … 'shocks the conscience…or interferes with rights implicit in the concept of ordered society.'" *Id.* at 352 (quoting *State ex rel. Greer v. Wiedenhoeft*, 845 N.W.3d 373, 386 (Wis. 2014)). The Police Association first argued that the City's action "shocked the conscience," but that portion of *Black* is unimportant for our purposes. *Id.* at 352-353.

The Police Association then asserted that the City had deprived it of a liberty interest. *Id.* at 353. The court characterized the claim as follows:

---

[12]The *Neiman* cap was already in existence, and was retroactively increased by the Wisconsin legislature. *Neiman*, 613 N.W.2d at 162.

[13]The Court applies the *Black* decision as controlling precedent, not for any preclusive effect. Thus, the Officers' arguments regarding preclusion are of no moment. *See* (Docket #16 at 16-17).

> Here, the Police Association has not asserted a fundamental right or liberty that is deeply rooted in this Nation's history and tradition. Rather, the Police Association claims that Wis. Stat. § 66.0502—on the day it was enacted—created a liberty interest in being free from residency requirements as a condition of employment. To make this argument, the Police Association pulls from *procedural* due process cases.

*Id.* The *Black* court analyzed the Police Association's procedural due process citation, *Hewitt*, noting that it said nothing about substantive due process. *Id.* The court went on to find:

> We recognize that the Supreme Court, in cases like *Hewitt*, has "repeatedly held that state statutes may create liberty interests that are entitled to the *procedural* protections of the Due Process Clause of the Fourteenth Amendment." *Vitek v. Jones*, 445 U.S. 480, 488, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (emphasis added). However, the "Supreme Court has never held that such state-created interests constitute a fundamental liberty interest protected under a substantive due process theory. Rather, the Court has analyzed state-created liberties under a procedural due process theory." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1047 (7th Cir. 1995) (emphasis added); *see also Robinson v. Howell*, 902 F.Supp. 836, 843 (S.D. Ind. 1995) ("A state cannot legislate or otherwise determine what constitutes a fundamental principle of justice and liberty so as to be worthy of protection under the federal constitution."). The Police Association has not pointed to any contrary authority. Because "[t]he doctrine of judicial restraint requires [a court] to exercise the utmost care" when determining whether a substantive due process right exists, we decline to create a new right or liberty interest in being free from residency requirements as a condition of employment. *See* [*Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126 (1992)].

*Id.* The court concluded that the Police Association failed to show a violation of a right protected by substantive due process. *Id.* at 354.

*Black* is precisely on-point and, as the final say on Wisconsin law on the issue, controlling. The Officers have characterized the "right" at issue *identically* to the Police Association, namely as "a substantive right . . . to be free from residency being used as a condition of employment." (Docket #16 at 9). *Black* found that such a right could not be based in the very same Section 66.0502 at issue here. The Court is not at liberty to disagree with *Black* any more than it would be able disagree with *Andre* as to the Officers' federal constitutional claim.

The Officers' attempts to distinguish *Black* are unavailing. First, they claim that "the due process claims at issue in Black had nothing to do with retroactive application of a law adversely affecting the substantive rights of City police officers[.]" (Docket #16 at 15). The Officers' entire argument on the point is as follows:

> [T]he due process issues in *Black* were: 1) whether 66.0502, Stats., created a constitutionally protected liberty interest in being free from residency being used as a condition of municipal employment, and; 2) whether the City's action in enacting an ordinance directing all City officials to disregard the law, and enforce an ordinance the legislature had deemed unlawful, sufficiently "shocked the conscience" so as to violate due process. *Supra*, at 2, fn.1. Those issues simply have nothing to do with the issues presented in this case.

*Id.* (emphasis added). The Court is at a loss to find a distinction between the emphasized statement and the claim asserted here, and the Officers' conclusory argument does nothing to alleviate the problem.

Second, the Officers state that "the claims in *Black* arose out of a completely different transaction and occurrence than what is identified in the present complaint." *Id.* They point to the fact that *Black* was decided upon the City's actions in 2013 to continue to enforce the residency requirement,

whereas the Officers now challenge the City's Zone requirement, as applied to them, in 2016. *Id.* at 15-16. While true, the statement is irrelevant. The *rule* announced in *Black* was that Section 66.0502 conferred no liberty interest to the Police Association in being free from a residency requirement. *Black*, 882 N.W.2d at 353-54. That rule, and not any identity between the underlying transactions challenged, it what is important.

5.  CONCLUSION

In light of the foregoing, the Court concludes that the Officers cannot prove any set of facts which would support their claims for relief. *Buchanan-Moore*, 570 F.3d at 827 (quotation omitted).[14] Because the Court finds that the Zone requirement is not retroactive, it need not conduct a *Martin* balancing test analysis or otherwise address the competing policy considerations underlying the Officers' asserted "right." *Martin*, 531 N.W.2d at 88. Again, the Officers do not challenge the Zone requirement as prospectively applied. *See supra* pg. 5 n.7. The Court must, therefore, grant the City's motion and dismiss this action with prejudice.

Accordingly,

IT IS ORDERED that the defendant City of Milwaukee's motion for judgment on the pleadings (Docket #11) be and the same is hereby GRANTED; and

---

[14]This conclusion is buttressed by the standard of review for assessing retroactivity. *Neiman* states that "[w]hether or not a legislative act that applies retroactively violates due process is a question of law, which this court reviews de novo." *Neiman*, 613 N.W.2d at 163.

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED with prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of November, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge